HULSE *v.* THE DORMER CO.

1. CONTRACTS—OFFER AND ACCEPTANCE CONSTITUTE CONTRACT.
   In an action by the official stenographers of the interstate commerce commission for copies of official reports of hearings by the commission furnished to defendant, a wholesale dealer in salt fish, an offer by plaintiffs to furnish said copies at 12½ cents a page and an acceptance of the offer by defendant, *held*, to constitute a contract, entitling plaintiffs to recover at the contract rate for all copies furnished previous to the cancellation of the contract by defendant.

2. SAME—DEFENDANT BOUND WHERE CONTRACT NOT LIMITED.
   Where defendant did not limit its order for copies of the report pertaining to the subject of salt fish, its claim that it was not interested in any other subject of the hearing and should not be obligated to pay therefor, is without merit.

3. SAME—CANCELLATION—DEFENDANT OBLIGATED TO PAY EXPENSE INCURRED.
   If, when plaintiffs received defendant's cancellation of the contract they had prepared for defendant copies of the reports, it must save them harmless as to the expense thereof.

Case-made from Menominee; Flannigan (Richard C.), J. Submitted January 10, 1923. (Docket No. 61.) Decided October 1, 1923.

Assumpsit by J. W. Hulse and another against The Dormer Company for services rendered. From a judgment for plaintiffs for less than amount claimed, they appeal. Reversed.

*Sawyer & Sawyer,* for appellants.
*Doyle & Barstow,* for appellee.

WIEST, C. J.    Plaintiffs, official stenographers for the interstate commerce commission, and authorized to furnish copies of proceedings before the commission at a charge of 12½c per page, wrote defendant the following letter:

"HULSE & ALLEN
"17 East 36th Street
"New York, June 26, 1919.
"Perishable Freight Investigation (Docket 10664).
"Charges for Protection Against Heat and Cold and Rules for Handling Fish—Fresh, Frozen, Pickled or Smoked.

"*Dear Sir:* The increase in charges and changes in rules and regulations proposed in Perishable Protective Tariff No. 1, compiled by the U. S. Railroad Administration and intended to supersede these now applicable to perishable products of all kinds, will be investigated by the Interstate Commerce Commission, in hearings to be held in several cities from July 7 to September 18, or later.

"As these increases and changes are of the utmost importance and shippers of perishable freight must follow the hearings carefully in order to protect their interests, we should be advised at once if you want copies of the official reports, which will be furnished at 12½ cents per page, the charge authorized and approved by the commission, so that we may make enough to supply you without delay.

"Respectfully,
"HULSE & ALLEN,
"Official Reporters."

Defendant, who was engaged in the wholesale salt fish business at Menominee, this State, replied:

"THE DORMER COMPANY
"Wholesale Salt Fish
"Menominee, Mich.,
July 3rd, 1919.
"HULSE & ALLEN,
"New York, N. Y.
"*Gentlemen:* We have yours of the 26th ult. in reference to the official report of the Interstate Commerce Commission regarding the protection of perish-

able goods.    We will be pleased to have a copy of this report.    Our line is shipping salted fish (pickled).

"Yours very truly,
"THE DORMER COMPANY."

Plaintiffs then wrote defendant:

"July 7, 1919.

"THE DORMER COMPANY,
"Menominee, Mich.

"*Gentlemen:* Please accept our thanks for your order of July 3, for the reports of the hearings in Docket No. 10664—Perishable Freight Investigation, which will have our careful attention.

"Please advise us to what official these reports are to be addressed.

"Respectfully yours,
"HULSE & ALLEN,
"Official Reporters."

Receipt of this letter was denied by defendant.

Plaintiffs sent mimeograph copies of the testimony taken by them at hearings held by the commission at Los Angeles, Portland, Oregon, and Denver in July, and at Chicago, New York, Atlanta and New Orleans in August and September, 1919.

October 4th, defendant wrote plaintiffs:

"THE DORMER COMPANY
"Wholesale Salt Fish
"Menominee, Mich.,
Oct. 4, 1919.

"HULSE & ALLEN,
"New York, N. Y.

"*Gentlemen:* We have been receiving the literature you have been sending but find it is not what we are wanting in our line of business.    What we were wanting was data on shipments of salt fish only.    This does not apply on our shipments excepting in certain instances.    We know that you are to a considerable expense in sending these books to us, and as they are not what we were expecting, we ask that you discontinue sending them.

"Yours very truly,
"THE DORMER COMPANY."

Plaintiffs replied:

"October 7, 1919.

"THE DORMER COMPANY,
    "Menominee, Mich.
    "*Gentlemen:* Replying to your letter of Oct. 6, if agreeable to you, we will accept your cancellation effective at the end of the hearing of October 5, in Docket No. 10664, a copy of the report having already been made for you up to that point.    We cannot accept cancellation of your order for that part of the report because we cannot return to our employees and get credit for the labor which they have expended in making the copy for you.
                    "Yours very truly,
"FWA/MHA.                    Official Reporters."

Defendant again wrote:

"THE DORMER COMPANY
"Wholesale Salt Fish
            "Menominee, Mich.,
                    Oct. 10, 1919.

"HULSE & ALLEN,
    "New York, N. Y.
    "*Gentlemen:* We have yours of the 7th in answer to ours of the 6th.    It is useless to waste postage in sending us any more of the literature.    We are not getting what we called for originally.    Our request was for data on shipments on salt fish entirely and we would not be interested and are not interested in the rulings and testimonies given on shipment of other commodities.
    "We do not understand that there is to be a charge connected with the information we expected to get.
                    "Yours very truly,
                    "THE DORMER COMPANY."

Plaintiffs asked the trial judge to instruct the jury that the letters constituted a contract and they were entitled to recover at the rate of 12½c a page for copies furnished.    This the court declined to do and charged the jury in substance:  The plaintiffs must show that the defendant had accepted all or a part of the material, and if defendant did accept all or any

part of the material it was liable to the plaintiffs for the reasonable market value of such material at the time and place it was received by the defendant.

The jury returned a verdict in favor of the plaintiffs for the sum of $50. The case is here by case-made and plaintiffs insist that the letters established a contract and they should be permitted to recover for copies of testimony furnished at the rate of 12½c per page. If the letters constituted a contract, then the only question is that of the right of plaintiffs to recover for copies furnished after the receipt of defendant's letter of October 4th.

We have carefully considered the correspondence between the parties and are persuaded that the offer and acceptance constituted a contract and plaintiffs have a right to recover, at the stipulated rate, for all copies furnished thereunder, previous to stoppage by defendant. We are not impressed with the claim of defendant that the order was for the official report of the findings of the commission. Such report would come after the close of the hearings and afford no opportunity for defendant to take part in such hearings if its interests were affected thereby. We apprehend that the official report made by the commission, at the close of the hearings, is in the nature of a public document and defendant would hardly enter into an engagement to pay 12½c a page therefor. There is no merit in the claim of the defendant that, being engaged in the salt fish business, it was not interested in any other subject at the hearing. The time for it to have limited its obligation to such portions of the testimony as related to the transportation of salt fish was when it ordered the testimony. Undoubtedly defendant has received a mass of testimony in which it has no interest, but if it ordered the same it must pay therefor.

Plaintiffs had a right to rely upon defendant's order

for the testimony and to have pay for all testimony sent up to the time of receipt of the letter stopping further delivery.    If, when plaintiffs received this letter of October 4th, they had prepared for defendant copies of the testimony and had it ready to send, then defendant must save them harmless as to the expense thereof.

The judgment is reversed and a new trial ordered, with costs to plaintiffs.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.